# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| BUILDING RESILIENT INFRASTRUCTURE & DEVELOPING GREATER EQUITY, INC., *Plaintiff,* <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU *and* RUSSELL VOUGHT, *in his official capacity as Acting Director, Consumer Financial Protection Bureau,* *Defendants.* | Case No. 8:25-CV-1367 |

## DECLARATION OF YILIN CHEN

I, Yilin Chen, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. The statements below are based on my personal knowledge. If called to testify to their accuracy, I could and would do so.

2. I am the General Counsel at Renew Financial Group, LLC ("Renew"). I have been at Renew for 1.5 years. In my role as General Counsel, I oversee all regulatory, compliance and legal function at Renew. In performing my job responsibilities on behalf of Renew, I have familiarized myself with the data collection, reporting, and other obligations that will be imposed on Renew in complying with the Final Rule issued by the Consumer Financial Protection Bureau ("CFPB") set forth in the *Residential Property*

*Assessed Clean Energy Financing (Regulation Z)*, 90 Fed. Reg. 2434 (Jan. 10, 2025) (the "Final PACE Rule").

3.     Renew, a Delaware corporation is a Property Assessed Clean Energy ("PACE") Administrator with headquarters in Oakland, California, and operates in the States of Florida and California.

4.     In Florida, Renew serves as a third-party administrator to Florida Green Finance Authority ("FGFA"), a program administrator authorized to partner with local municipalities and county property tax collectors to facilitates the provision of PACE financing under Fla. Stat. § 163.08 and any applicable local and municipal ordinances in which it operates.  Florida's PACE program requires Renew to adhere to multiple legal requirements designed to ensure consumer protections, including verifying its customers' ability-to-repay their PACE assessments.

5.     In California, Renew serves as a third-party administrator to California Statewide Communities Development Authority ("CSCDA"), a program administrator authorized to partner with local municipalities and county property tax collectors to facilitate the provision of PACE financing under applicable California state, local, and municipal ordinances in which it operates.  California similarly requires Renew to adhere to legal requirements designed to protect consumers who seek PACE financing in the State.

6. As of May 2, 2025, Renew has 138 full time employees. In fiscal year 2024, Renew has facilitated the financing totaling $215,286,507.45 in both Florida and California for home-improvement projects in clean energy, resiliency, storm hardening, and other critical categories. These projects were in more than 427 state, local, and municipal communities; have created and sustained over 9,192 jobs; and have resulted in substantial cost-savings for Renew's customers by offering access to an affordable financing option for their critical home-improvement projects, lowering their energy bills, and making their homes more weather-resistant.

7. Renew is registered with the Florida Secretary of State to conduct business in Florida and currently conducts most of its business in Florida, including in Hillsborough County. Of Renew's 133 full time employees, 38 of these employees are located in Florida. 89.52% of Renew's PACE transactions (by funding volume) occur in Florida and approximately 1,617 of Renew's customers are located in Florida. Additionally, to date, Renew has enrolled over 5,156 Florida contractors as its third-party partners to install PACE-financed clean energy and home improvement projects.

8. In Florida and California (for Fiscal Year 2024), Renew has facilitated PACE financing for approximately 1,807 households. Of the home improvement projects financed in FY'24, approximately 41% of PACE financing arrangements are for roofing; 21% of the PACE financing

arrangements are for windows and storm hardening; 14% of the PACE financing arrangements are for HVAC projects; 10% of the PACE financing arrangements are for doors and hurricane hardening; 7% are for solar related home improvements; and 3% of the home improvement projects are for energy efficiency and water efficiency projects. Renew's customers are generally low-income families with an average weighted FICO score of 656 (as of September 2024).

9. Approximately 37% of Renew's customers are elderly customers who are 65 and older. Many of Renew's customers often do not have access to the full spectrum of credit options that are traditionally available to consumers. However, many of these customers have excellent credit and ability-to-repay as demonstrated by the high repayment success rate and low delinquency rate across all Renew PACE assets. As of September 2024, the delinquency rate for Renew customers is only 1.487% using the 12-month trailing data.

10. The CFPB's Final PACE Rule—which defines PACE financing as "credit" in order to impose essentially the entirety of the Truth In Lending Act ("TILA"), portions of the Real Estate Settlement Procedures Act ("RESPA"), and Secure And Fair Enforcement For Mortgage Licensing Act ("SAFE Act") upon PACE financing transactions—will inflict significant, irreparable harm

on Renew during the pendency of BRIDGE's lawsuit challenging the Final PACE Rule.  For example:

    a.    While the lawsuit is pending and absent preliminary injunctive relief against the Final PACE Rule, Renew will still need to take certain actions to prepare for the implementation of the Final PACE Rule.  To prepare for the implementation, Renew will need to hire additional headcount on its product and engineering teams to implement the Final PACE Rule from an operational and technological perspective.  Renew anticipates that it will need to engage engineering and project manager consultants to ensure accurate and timely implementation of the Final PACE Rule.  Renew also will need to engage outside regulatory counsel to provide clarification on certain aspects of the Final PACE Rule.

    b.    Renew will also need to devote additional internal technology and product resources to ensure that it can implement the Final PACE Rule from an operational and technological perspective.  Given the short timeframe and the complexity of this rule, Renew anticipates that it will need four internal employees to work full time on the implementation.  Renew's internal analysis indicates that the average hourly rate of these four employees will be approximately $120 per hour as they will have to be subject matter experts in areas of technology and product management.  Renew expects that it will incur

about $980,000 in additional headcount costs for the implementation of the Final PACE Rule.

  c. Renew anticipates that it will need to hire third-party consultants in areas such as engineering and product management to ensure the timely implementation of the Final PACE Rule. Using historical data from prior regulatory implementations, Renew estimates that it will incur a cost of $1,100,000 to engage the necessary third-party consultants to compliantly and timely implement the Final PACE Rule.

  d. For January 2025, Renew has spent approximately $32,000 in legal fees to engage outside counsel for the purpose of implementing the Final PACE rule. Given the complexity of the Final PACE rule, Renew needs additional clarifications and legal guidance on certain aspects of the rule. The $32,000 in legal fees for January 2025 is typical and it reflects the average monthly legal spend for outside counsel as it relates to the implementation of this rule. Renew anticipates that it would incur approximately $448,000 in legal fees across the 14-month period from January 2025 to March 1, 2026 for the compliant implementation of the Final PACE Rule.

  e. In total, Renew estimates that it will incur an additional $2,528,000 across engineering, product, project management, operations, and legal to implement the Final PACE Rule by March 1, 2026.

11. Additionally, once the Final PACE Rule goes into effect on March 1, 2026, Renew will continue to incur significant costs to comply with the Final PACE Rule's numerous and burdensome requirements. Renew anticipates that it will lose close to 72% of its funding volume after the rule goes into effect based on historical data from California after the implementation of AB 1284. Renew expects that it will continue to incur financial and other harms if the Final PACE Rule goes into effect, including, but not limited to, the loss of customers, revenue, and profit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on <u>June 5, 2025</u>                  */s/Yilin Chen*
                                                 YILIN CHEN
                                                 *General Counsel*
                                                 Renew Financial Group, LLC