IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| BUILDING RESILIENT INFRASTRUCTURE & DEVELOPING GREATER EQUITY, INC., <br> *Plaintiff,* <br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU *and* RUSSELL VOUGHT, *in his official capacity as Acting Director, Consumer Financial Protection Bureau*, <br> *Defendants*. | Case No. 8:25-cv-1367 |

**PLAINTIFF'S TIME-SENSITIVE MOTION FOR
INJUNCTION PENDING APPEAL**

Plaintiff Building Resilient Infrastructure & Developing Greater Equity, Inc. ("BRIDGE") respectfully requests a time-sensitive injunction pending its now-filed appeal of this Court's November 3, 2025 Order, Dkt.56, which Order denied BRIDGE's motion for a preliminary injunction enjoining the Consumer Financial Protection Bureau ("CFPB") from enforcing its rule, Residential Property Assessed Clean Energy Financing (Regulation Z), 90 Fed. Reg. 2434 (Jan. 10, 2025) ("Final Rule"). Respectfully, for the reasons explained below, BRIDGE requires time-sensitive relief by November 25, 2025, enjoining the Final Rule during the appeal so that BRIDGE and its members do not incur irreparable harm during the pendency of the appeal. **If the Court does not grant this Motion by November 25, BRIDGE will request this relief from the Eleventh Circuit.** *See* **Fed. R. App. P. 8(a)(1)–(2)**. And while BRIDGE appreciates that this Court has set an expedited summary judgment

schedule, with all respect, that does not mitigate the irreparable harm that BRIDGE's members suffer every week under the Final Rule, including as its March 1, 2026, compliance date approaches. Further, since this Court issued its decision denying BRIDGE's Motion For Preliminary Injunction, the U.S. Department of Justice ("DOJ") announced that CFPB is likely to shutter its doors in early 2026 due to the lack of any constitutional funding (a position that also means that CFPB lacked constitutional funding when it issued the Final Rule earlier this year). This new development makes the situation for BRIDGE's members even more dire and untenable. Notably, the filing of the notice of appeal and this Motion does not divest this Court of jurisdiction to adjudicate BRIDGE's ongoing Motion For Summary Judgment, and this Court should proceed with briefing and oral argument on that summary judgment motion. *See Alabama v. EPA*, 871 F.2d 1548, 1553–54 (11th Cir. 1989); *Johnson v. USDA*, 734 F.2d 774, 789 (11th Cir. 1984).

In support of this Motion BRIDGE explains as follows:

1. A plaintiff seeking "an injunction pending appeal" must satisfy four factors: "(1) a substantial likelihood that [it] will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the [movant] unless the injunction is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest." *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021) (alterations in original) (citation omitted). Regarding the first factor, the movant must make "a showing of only *likely* or probable, rather than *certain*, success," *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 n.12 (11th Cir. 2020) (citation omitted), and

courts must balance the strength of a plaintiff's showings on likelihood of success and the equities, *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010) (citation omitted). For the second factor, monetary losses that cannot be recouped constitute "irreparable harm," *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 765 (2021) (per curiam), including where a plaintiff cannot "recover monetary damages because of sovereign immunity," *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013). The Administrative Procedure Act's ("APA") limited waiver of sovereign immunity does not permit recovery of money damages against an offending agency, 5 U.S.C. § 702; *see Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–61 (1999), meaning substantial, "nonrecoverable" compliance "costs" a party incurs because of an agency's challenged rule constitute irreparable harm, *Ohio v. EPA*, 603 U.S. 279, 291–92 (2024) (citation omitted). The third and fourth factors "merge" where the nonmovant is the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[T]here is generally no public interest in the perpetuation of unlawful agency action." *Florida v. Becerra*, 544 F. Supp. 3d 1241, 1304 (M.D. Fla. 2021) (citing *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Finally, "granting a[n injunction] that simply maintains the status quo pending appeal 'is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the [injunction] would inflict irreparable injury on the movant.'" *LabMD, Inc. v. FTC*, 678 F. App'x 816, 819 (11th

Cir. 2016) (citation omitted); *accord Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977).

2. BRIDGE seeks this injunction pending appeal on the basis of its lead claim that the Final Rule is unlawful because it wildly exceeds Congress' narrow statutory grant of rule-making authority to CFPB under Section 307 of the Economic Growth, Regulatory Relief, and Consumer Protection Act ("EGRRCPA") to "prescribe regulations that carry out the purposes of" the Truth in Lending Act's ("TILA") ability-to-repay provision "with respect to [PACE]" while ensuring that such regulations "account for the unique nature of [PACE.]" 15 U.S.C. § 1639c(b)(3)(C)(ii).[*] As already explained at length in BRIDGE's preliminary injunction briefing, the Final Rule goes far beyond this limited authority by applying almost all TILA provisions, portions of the Real Estate Settlement Procedures Act ("RESPA"), and the Secure and Fair Enforcement for Mortgage Licensing Act of 2008 ("SAFE Act") to PACE, even though Section 307 does not mention those other TILA provisions or statutes and they have nothing to do with determining whether a homeowner has the ability to repay the PACE property tax assessment—the sole "purpose[ ]" of TILA's ability-to-repay provision. *Id.* Further, the Final Rule ignores Section 307's command to "account for the unique nature of [PACE]," *id.*, and instead simply asserts that applying TILA's "existing" ability-to-pay "regime" for "residential

---

[*] Although Plaintiff raised four claims against the Final Rule, Dkt.23 at 7–25, Plaintiff raises in this Motion For Injunction Pending Appeal *only* its claim that the Final Rule exceeds CFPB's statutory authority.

- 4 -

mortgage loans" is "appropriate for PACE," "notwithstanding certain characteristics of PACE financing or PACE programs discussed by commenters," 90 Fed. Reg. at 2465. Although CFPB claimed that the Final Rule is legal because PACE is "consumer credit" under TILA, *id.* at 2449, that argument fails. Congress defined the relationship between TILA and PACE by passing Section 307 in 2018 against the backdrop of a uniform legal understanding that PACE does *not* qualify as "consumer credit" under TILA because it is a tax assessment. *See* 15 U.S.C. § 1639c(b)(3)(C)(i). Interpreting TILA's 1968 definition of "consumer credit" to cover PACE would render Section 307—a far newer statute that narrowly authorizes CFPB to regulate PACE to carry out the purposes of just one portion of TILA—superfluous, contrary to *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010). In any event, even if Congress had never enacted Section 307, PACE never fit the definition of "consumer credit" under TILA because PACE does not impose any debt repayment obligation on an individual natural person. *See In re Hero Loan Litig.*, No.ED CV 16-08943, 2017 WL 3038250, at *3 (C.D. Cal. July 17, 2017); *Burke v. Renew Fin. Grp., Inc.*, No.2:21-CV-02938, 2021 WL 5177776, at *3 (C.D. Cal. Aug. 13, 2021); *Concepcion v. Ygrene, Inc.*, No.19-CV-1465, 2020 WL 1493617, at *4 (S.D. Cal. Mar. 27, 2020).

2. BRIDGE, its members, and the public at large now face significant, immediate, and unrecoverable financial harm—including a serious risk of business closure—during the pendency of BRIDGE's appeal of the denial of its motion for a preliminary injunction, which is sufficient to establish irreparable harm. *See Ala. Ass'n of Realtors*, 594 U.S. at 765; *Alsop v. DeSantis*, No.8:20-cv-1052-T-23SPF, 2020 WL

4927592, at *4 (M.D. Fla. Aug. 21, 2020); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 & n.24 (3d ed. 2025 update).  Renew, one of BRIDGE's members, estimates $2,528,000 in pre-effective-date compliance costs (including approximately $32,000 already spent on legal fees in January 2025 and an additional $448,000 through March 1, 2026), about $980,000 in added headcount costs, and $1,100,000 for third-party consultants, and anticipates a 72% loss of funding volume once the Final Rule takes effect, Dkt.25 ¶¶ 10(b)–(e), 11, while Ygrene, another BRIDGE member, already spent nearly $100,000, expects another $500,000 for compliance , must purchase and implement a new technology platform with implementation and project-management costs well over $1,000,000 and ongoing outside technology expenditures exceeding $1,000,000 annually, will add at least eight full-time employees (approximately $880,000), and projects a 78% loss of funding volume post-effective date.  Dkt.27 ¶¶ 10–13.

  3. The Court's expedited summary judgment briefing schedule, respectfully, does not address or resolve the irrecoverable expenditures that BRIDGE's members must incur to prepare for compliance with the Final Rule.  It is a complex, labor-intensive, and expensive task for PACE companies to implement the numerous, complicated TILA, RESPA, and SAFE Act requirements that they will now be subject to for the first time under the Final Rule, *see* Dkt.25 ¶¶ 10–11; Dkt.27 ¶¶ 9–13, which explains why CFPB set the rule's effective date and compliance deadline as March 1, 2026, *see* 90 Fed. Reg. at 2434.  Due to the complexity of changes required to comply with TILA, RESPA, and the SAFE Act, it is not possible for PACE companies to wait

until shortly before March 1, 2026 to begin compliance efforts. Instead, BRIDGE member PACE companies must implement changes to comply with the Final Rule during the pendency of the expedited summary judgment schedule, which will impose further irreparable harm upon those companies.

4. An additional circumstance recently arose that further justifies an immediate injunction pending appeal, lest BRIDGE's members be left in limbo as the March 1, 2026 compliance date approaches. On November 7, 2025, DOJ concluded that CFPB has no constitutional funding because the Federal Reserve has no "combined earnings" to send to CFPB, and thus CFPB will cease operations absent appropriations from Congress that are exceedingly unlikely to be forthcoming. *See* Notice of Potential Lapse in Appropriations to Pay the Expenses of the Bureau, *Nat'l Treasury Emps. Union v. Vought*, No.1:25-cv-00381 (ECF 145) (D.D.C. Nov. 10, 2025) (attached hereto as "Exhibit 1"); Memo. for Russell T. Vought, Acting Director CFPB; *Nat'l Treasury Emps. Union v. Vought*, No.1:25-cv-00381 (ECF 145-1) (D.D.C. Nov. 10, 2025) ("Vought Memo.") (attached hereto as "Exhibit 2"). This creates two additional problems for BRIDGE's members, that only an injunction blocking the Final Rule's enforcement can address at this stage. First, as a practical matter, if CFPB will cease operations in early 2026, there will be no agency for BRIDGE's members to consult with if they must attempt to comply with the Final Rule's complicated requirements as to PACE, lest those members be subjected to costly private lawsuits that the Final Rule authorizes. 90 Fed. Reg. at 2491. Second, under the logic of DOJ's new position, CFPB did not even have constitutional funding when it issued the Final Rule in

January of this year because the Federal Reserve lacked "combined earnings" to send to CFPB pursuant to 12 U.S.C. § 5497(a)(1) in 2022, 2023, 2024, or 2025, *see* Miguel Faria e Castro, Samuel Jordan-Wood, *The Fed's Remittances to the Treasury: Explaining the 'Deferred Asset'*, Fed. Rsrv. Bank of St. Louis (Nov. 21, 2023) ("[B]eginning in September 2022, remittances due [to the Treasury] became negative")†; Vought Memo. at 1, 24 ("Since 2022, when the Federal Reserve started experiencing losses[.]"), which would require vacatur of the Final Rule since it was issued with unconstitutional funds, *see CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (en banc) (Jones, J., concurring) (explaining "proper remedy" when "a government actor . . . exercis[ing] even [ ] lawful authority using money the actor cannot lawfully spend" is "to disregard the government action"); *see also United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016) (explaining spending money in violation of the Appropriations Clause can violate the Constitution). If BRIDGE wishes to raise this funding argument now based on DOJ's new position, it would need to amend its extant Complaint or bring a new lawsuit against CFPB, and there may well be no CFPB personnel to litigate the issue starting as early as January 2026.

4. Finally, the balance of the equities and public interest—factors that merge here, *Nken*, 556 U.S. at 435—strongly favor enjoining the Final Rule during the pendency of BRIDGE's appeal. BRIDGE showed that the Final Rule is likely unlawful because it exceeds CFPB's statutory authority, *see* Dkt.23 at 7–11, so there is

---

† Available at https://www.stlouisfed.org/on-the-economy/2023/nov/fed-remittances-treasury-explaining-deferred-asset (last accessed November 19, 2025).

no harm to CFPB and enjoining the Final Rule would be in the public's interest. And an injunction would preserve States' current PACE programs giving homeowners, especially vulnerable, low-income homeowners in natural-disaster-prone States, a reliable method to finance critical and socially beneficial home-improvement projects without relying on credit cards, making a down payment, or incurring personal debt. *See id.* at 21–23.

## CONCLUSION

For the reasons explained above, the Court should grant Plaintiff's Time-Sensitive Motion For Injunction Pending Appeal.

Dated November 19, 2025.

| | |
|---|---|
| JOHN S. GIBBS III<br>Florida Bar No. 91102<br>TROUTMAN PEPPER LOCKE LLP<br>600 Peachtree Street N.E., Suite 3000<br>Atlanta, Georgia 30308<br>(404) 885-3000<br>evan.gibbs@troutman.com<br>*\* Admitted pro hac vice* | */s/Misha Tseytlin*<br>MISHA TSEYTLIN,* *Lead Counsel*<br>TROUTMAN PEPPER LOCKE LLP<br>111 South Wacker Dr., Suite 4100<br>Chicago, Illinois 60606<br>(608) 999-1240<br>misha.tseytlin@troutman.com<br>*Attorneys for Plaintiff* |